UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:19CV-00131-JHM

CHARLES WEEDMAN, JR.                                                                    PLAINTIFF

VS.

TIM MOUTARDIER, et al.                                                                  DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on a motion by Defendants, Tim Moutardier and Brandon Puckett, for summary judgment. [DN 27]. Plaintiff did not respond to the motion for summary judgment. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

## I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of

materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

On August 12, 2019, Plaintiff, Charles Weedman, Jr. ("Weedman"), was admitted to the Twin Lakes Hospital Emergency Room in Leitchfield, Kentucky. Prior to his admission, Weedman had taken methamphetamine, tried to kill himself, and had been beating his head against the wall at home. Once at the emergency room, Weedman again threatened to kill himself, engaged in aggressive and combative conduct, and threatened to harm the nurses. As a result of this conduct, Defendants, City of Leitchfield Police Department Officers Tim Moutardier and Brandon Puckett (cumulative "Defendants"), received a call for service involving a mental inquest warrant for Weedman.

Upon the officers' arrival, hospital staff briefed Defendants regarding Weedman's condition. Moutardier averred that upon arrival he learned that Weedman had been threatening the nursing staff, that the nurses were scared of him, and that a nurse informed Moutardier that the officers might need more help to subdue him. [DN 27-4, Moutardier Aff. at ¶ 4]. Moutardier testified that he knew they could not have Weedman evaluated for a mental inquest warrant while he was still under the influence of drugs. [*Id*. at ¶ 2]. As a result, Moutardier contacted Judge Steven Crebessa for guidance and was instructed by Judge Crebessa to arrest Weedman, transport him to jail, and that Weedman would be evaluated later once he was sober. [*Id.*].

The officers entered Weedman's hospital room. Moutardier calmly instructed Weedman to get out of bed and get dressed because he was being placed under arrest for disorderly conduct. [Moutardier Aff. at ¶ 6]. Nurse Makayla Hack testified that Weedman was uncooperative, refused to obey the officers' commands, refused to get dressed, and tried to get away from them. [Makayla Hack Dep. at 17–18]. After trying to reason with him, Moutardier attempted to escort Weedman out of the hospital by taking him by his left arm, to which Weedman resisted by pulling his arm away and cussing at him. [Moutardier Aff. at ¶8]. Moutardier then grabbed Weedman, spun him around, and placed him facing a wall inside the room until Puckett could handcuff his hands behind his back. [*Id.*]. Weedman was arrested and charged with disorderly conduct and resisting arrest. [DN 27-7].

On September 30, 2019, Weedman filed a civil action alleging Fourth Amendment individual-capacity claims for excessive force and false arrest against Defendants. [DN 1, DN 5, DN 8]. Weedman alleged that the officers entered the hospital room, failed to identify themselves, slammed Weedman's head against the wall three to four times, removed him from the emergency room in his boxer shorts with his "penis hanging out," choked him, and rammed him into the police car. [DN 5 at 6; DN 27-6]. After completion of discovery, Defendants now move for summary judgment against Weedman on his Fourth Amendment excessive force and false arrest claims.

### III. DISCUSSION

**A. Weedman's Failure to Respond**

Weedman failed to respond to the motion for summary judgment. According to Federal Rule of Civil Procedure 56(e), "a party who elects not to respond to a motion for summary judgment risks having judgment entered against them if the court finds it appropriate to do so." *Odom v. Pheral*, No. 5:12-CV-00073, 2015 WL 474318, at *4 (W.D. Ky. Feb. 4, 2015). "Even

so, a district court may not grant summary judgment solely because the non-moving party has failed to . . . respond to the motion within the applicable time limit." *Id.* "'[T]he Federal Rules of Civil Procedure still require the moving party to demonstrate the absence of a disputed question of material fact and a ground that would entitle the moving party to judgment as a matter of law.'" *Id.* (quoting *Miller v. Shore Financial Services, Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005)). *See also Smallwood v. United States*, No. 10-260-GFVT, 2015 WL 770363, at *2 (E.D. Ky. Feb. 23, 2015).

However, "[i]t is standard practice that, where a non-moving party fails to respond to a moving party's motion, 'the Court may accept the truth of [the movant's] factual allegations, and determine whether [the movant is] entitled to summary judgment' on the basis of those accepted facts." *Bailey v. Ingram*, No. 5:14-CV-279, 2018 WL 6112972, *2 (E.D. Ky. July 26, 2018) (quoting *Sheils v. Jordan*, 841 F. Supp. 2d 727, 729 (S.D.N.Y. 2012)). "In this context, 'the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Bailey*, 2018 WL 6112972, *2 (quoting *Byrd v. Brandeburg*, 922 F. Supp. 60, 62 (N.D. Ohio 1996)). That being the law, the Court accepts as true Defendants' factual allegations. It is only left to determine whether Defendants are entitled to summary judgment on the basis of those facts.

**B. Section 1983 Claims**

To state a claim under § 1983, a plaintiff must establish both that 1) he "was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted). It is undisputed that Defendants were acting under color of state law when they apprehended Weedman. Because "[s]ection 1983 is not itself a source of any

substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced[,]" the Court's "first task . . . is to identify the specific constitutional . . . rights allegedly infringed." *Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 727–28 (6th Cir. 2007) (citations omitted). As discussed above, Weedman alleges that Defendants violated his Fourth Amendment rights.

Defendants contend that they are entitled to qualified immunity on Weedman's Fourth Amendment claims asserted against them in their individual capacity and seek summary judgment on those claims. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted); *Miller v.. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To demonstrate that Defendants are not entitled to qualified immunity, Weedman must prove that a constitutional right was violated and that the right was clearly established at the time of the violation, i.e., that a reasonable officer confronted with the same situation would have known that the use of force against Weedman or the arrest would violate Weedman's right. *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Pearson v. Callahan*, 555 U.S. 223 (2009); *Hansen v. Aper*, 746 F. App'x 511, 515–16 (6th Cir. 2018); *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017); *Kent v. Oakland County*, 810 F.3d 384, 390 (6th Cir. 2016); *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008).

1. **Fourth Amendment Excessive Force**

In determining whether Defendants used excessive force against Weedman, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1987). It is axiomatic that a citizen has a constitutional right, secured by the Fourth Amendment, not to be subjected to excessive force during an arrest, investigatory stop, or other "seizure" of his person. *Id.* at 395. Moreover, citizens have a constitutional right to be free from police force when they are fully compliant and not resisting reasonable police action. *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012); *Williams v. Dame*, No. 4:17-CV-P67-JHM, 2019 WL 691410, at *3 (W.D. Ky. Feb. 19, 2019).

A proper application of the "objective reasonableness" standard "'requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Scott v. Clay County, Tenn.*, 205 F.3d 867, 876–77 (6th Cir. 2000) (quoting *Graham*, 490 U.S. at 396–97) (emphasis removed). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–397. Under such circumstances, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396. A court is not to substitute its own notion of the "proper police procedure for the instantaneous decision of the officer at the scene." *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000).

A balancing of these factors suggests that the force used by Defendants in effecting the arrest of Weedman was objectively reasonable. As to the first factor, the severity of the crime, Weedman made threats of bodily harm to the nurses at Twin Lakes Hospital. He engaged in aggressive and combative conduct toward the hospital staff and Defendants. Weedman was ultimately charged with disorderly conduct and resisting arrest. [DN 27-7].

As to the second factor—the potential threat to officers or others—Weedman was an immediate threat to the nurses, the officers, and himself. The record reflects that Weedman was under the influence of methamphetamine, was very aggressive and combative, and had threatened to kill himself and the nurses. [DN 24-3, Nurse Phyllis Sandlin Dep. at 11–12]. Specifically, Weedman stated "I'm going to kill you. You better not call the police." [*Id.* at 12]. Similarly Nurse Tonia Elsworth testified that Weedman had violent outbursts, was yelling, screaming, threatening suicide, and threatening to leave. [DN 24-1, Tonia Elsworth Dep. at 19–20]. Nurse Elsworth further testified that Weedman's actions were unpredictable, and she feared for her own safety. [*Id.* at 19–21]. Moutardier stated that throughout the incident, he perceived a potential threat of bodily injury from Weedman to the nursing staff, law enforcement and Weedman. [Moutardier Aff. at ¶ 10]. Accordingly, the Court finds that Weedman's highly agitated and intoxicated state, his demonstrated suicidal tendencies, his verbal threats of physical violence, and both his physical and verbal resistance to arrest and being handcuffed presented a strong risk to the safety of the officers, hospital staff, and Weedman.

The third factor—whether Weedman resisted arrest or attempted to evade arrest—also supports a finding of the objective reasonableness of Defendants' actions. Generally, "officers are required to 'de-escalate the situation and adjust the application of force downward' when confronted with a mentally disabled person." *Kozma v. City of Livonia*, No. 14-12268, 2015 WL

8310401, at *10 (E.D. Mich. Dec. 9, 2015) (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013)); *see also Sanders v. City of Pembroke*, No. 5:19-CV-23-TBR, 2020 WL 4572360, at *8 (W.D. Ky. Aug. 7, 2020). Here, with Weedman's drug use and suicidal ideations, Defendants attempted to de-escalate the situation. The record reflects that prior to arresting Weedman, the officers formulated a plan to try to de-escalate the situation: (1) they initiated conversation and tried to reason with Weedman; (2) they spoke in a calm tone; (3) they never used any weapons, and (4) they made the decision not to call more officers to the scene so as not to agitate Weedman. [Moutardier Aff. at ¶ 5].

Additionally, the record reflects that Weedman resisted being handcuffed and arrested by Defendants. Upon entering the hospital room, Moutardier testified that he told Weedman to get out of bed and get dressed because he was being placed under arrest for disorderly conduct. [*Id.* at ¶ 6]. Nurse Elsworth testified that the officers were not yelling, but used a normal tone of voice and was calm. [Elsworth Dep. at 16]. Nurse Hack testified that Weedman was uncooperative and refused to obey the officers' commands. [Hack Dep. at 17–18]. Specifically, she testified that Weedman "tried to get up and was resisting" and tried "to get away from them . . . trying to avoid being handcuffed and taken to jail." [*Id.* at 14–15]. Moutardier stated that Weedman ordered the officers out of his room and stated that he was not going anywhere. Weedman would not get out of bed, put his clothes on, or leave with the officers. [Moutardier Aff. at ¶ 7]. Moutardier advised Weedman he could walk out like a man or be carried out like a child—it was up to him. [*Id.*]. The nurse and the officers requested Weedman's compliance again, but Weedman refused to comply. At one point, Weedman began to get dressed, but then stopped and yelled that he was not going anywhere. [*Id.*].

After these exchanges, Moutardier testified that he attempted to escort Weedman out of the hospital by taking him by his left arm, to which Weedman resisted by pulling his arm away and cussing at him. [*Id.* at ¶ 8]. Moutardier then grabbed Weedman, spun him around, and placed him facing a wall inside the room until Puckett could handcuff his hands behind his back. [*Id.*; DN 29, Videotape of Twin Lake Emergency Room]. Both Nurses Hack and Elsworth testified that they never observed Defendants bang Weedman's head against the wall, rough him up, or do anything excessive. [Elsworth Dep. at 13, 22; Hack Dep. at 15]. According to Moutardier, Weedman continued to yell and squirm during the handcuffing process. [Moutardier Aff. at ¶ 9]. Defendants then walked Weedman out of the hospital with him wearing a dark pair of shorts. [*Id.*; Videotape; Elsworth Dep. at 15–16; Hack Dep. at 11].

Moutardier's action of placing Weedman up against the wall to enable Puckett to place handcuffs on him does not qualify as excessive force. Weedman made verbal threats, repeatedly refused Defendants' commands, physically resisted being taken from the room or handcuffed, and was verbally hostile, abusive, and profane. It is well-settled that law enforcement officers have the authority to use some level of force to effectuate an arrest. *Smith v. Shelby Cty., TN*, 721 F. Supp. 2d 712, 728 (W.D. Tenn. 2010). The "Sixth Circuit has consistently held that a suspect's resistance justifies the application of minimal force to subdue and handcuff him." *Id.; Ashbrook v. Boudinot*, No. C2-06-140, 2007 WL 4270658, at *6 (S.D. Ohio Dec. 3, 2007). In fact, the Sixth Circuit recognizes that using a taser or a knee strike against someone who is actively resisting arrest does not qualify as excessive force. *Rudlaff v. Gillispie*, 791 F.3d 638, 641–42 (6th Cir. 2015). The uncontested record demonstrates that Moutardier's action of placing Weedman against the wall was a reasonable response to Weedman being uncooperative, trying to pull away from the officer, and resisting application of the handcuffs and was not excessive.

Accordingly, the Court finds that the amount of force used to accomplish the arrest is objectively reasonable based on Fourth Amendment seizure principles, and thus, no constitutional violation occurred.

**2. Fourth Amendment False Arrest**

Federal false arrest claims require a plaintiff to demonstrate an absence of probable cause. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005); *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010); *Webb v. United States*, 789 F.3d 647, 666 (6th Cir. 2015). "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993). "The Supreme Court has held that the reason the officer gives for an arrest need not be the reason which actually provides probable cause for the arrest." *Howse v. Hodous*, 953 F.3d 402, 409–10 (6th Cir. 2020) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004)). If the facts known to the officers support probable cause in any form, then an individual may lawfully be arrested. *Id.* Weedman committed a crime in Defendants' presence. [DN 27-7]. Because probable cause existed to prosecute Weedman for disorderly conduct and resisting arrest, he cannot proceed on his false arrest claim.

**IV. CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that motion by Defendants, Tim Moutardier and Brandon Puckett, for summary judgment [DN 27] is **GRANTED**. A judgment shall be entered consistent with this opinion.

*Joseph H. McKinley Jr.*, Senior Judge
United States District Court

cc: Charles Weedman, Jr., *pro se*
counsel of record

June 23, 2021